RICHARD WYNNE AND BEATRICE WYNNE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wynne v. Commissioner
Docket No. 763-74.
United States Tax Court
T.C. Memo 1982-572; 1982 Tax Ct. Memo LEXIS 165; 44 T.C.M. (CCH) 1289; T.C.M. (RIA) 82572; September 30, 1982. Richard M. Campbell and Susan Grossman, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION Korner, Judge: This case is before the Court on respondent's motion for summary judgment under Rule 121, [1] or, in the alternative, to dismiss the instant case for failure of petitioners to prosecute, under Rule 123(b). In his statutory notice of deficiency herein, issued under date of November 2, 1973, respondent determined deficiencies of income tax and additions to tax under section 6653(b) [2] as follows: TAXABLE YEARS
DEFICIENCY IN
ADDITION TO TAX
ENDING DEC. 31:
INCOME TAX
[3] SECTION 6653(b) 1962
$43,005.90
$21,502.95
1963
252,325.06
126,162.53
1964
457,826.65
228,913.32
1965
818,364.33
409,182.16
1966
164,822.74
82,411.37
1967
48,955.30
24,477.65
1968
8,211.68
4,105.84
1969
14,661.38
7,330.69
*166 In their timely filed petition herein, petitioners put all such amounts in issue. At the time of filing their petitione herein, petitioners were residents of Great Neck, New York. The latest address supplied by petitioners to this Court, by telegram received March 16, 1977, was at 10281 East Bay Harbor Drive, Bay Harbor, Florida 33154. Respondent's answer filed herein affirmatively alleged that all or a part of the deficiencies for each of the above years was due to fraud on the part of petitioner Richard Wynne with intent to evade tax within the meaning of section 6653(b), and alleged sufficient facts which, if proved, would support such allegation. Petitioners having filed no reply, and respondent having failed to move with respect thereto, such allegations are deemed denied, Rule 37(c). The case was thereafter calendared for trial before the Court on January 12, 1976 at New York, N.Y., but was continued from that calendar upon the representation of the parties that a basis for settlement of the case had been reached. Upon the failure of petitioners to execute the *167 necessary documents to effectuate this settlement, the case was again calendared for trial at New York on January 10, 1977. It was again continued from that trial calendar on the basis that an agreed settlement between the parties had been reached. Petitioners once again having failed to execute the necessary settlement documents, the case was restored to the general trial calendar and was again noticed for trial at New York, N.Y. on October 16, 1978. The case was continued from that calendar upon petitioners' representations (conveyed to the Court by respondent) that petitioners were seriously ill and unable to complete settlement negotiations or prepare for trial. The case was thereafter reset for trial at New York, N.Y. on a trial calendar of this Court beginning March 22, 1982. Under date of January 6, 1982, respondent served upon petitioners, at their last known address in Florida given above, lengthy and detailed requests for admissions under Rule 90. No response was received from petitioners with respect to these requests for admissions. When the case was called for trial at New York, N.Y. on March 22, 1982, there was no appearance by or on behalf of petitioners. At *168 that time, respondent filed his motion for summary judgment herein, based upon the facts deemed to be admitted by petitioners' failure to respond to respondent's request for admissions. Respondent also filed a motion to dismiss for failure of petitioners to prosecute, with respect to the deficiencies in tax only. Such motions were accompanied by affidavits detailing respondent's repeated efforts to contact petitioners with a view to making trial preparations, as well as for the purpose of establishing the truth of numerous third-party statements received by respondent with respect to petitioners' health. Such affidavits strongly support an inference that petitioners have engaged in a lengthy and consistent pattern of refusing any cooperation with respondent in preparing this case for trial, and have repeatedly misled respondent and this Court with respect to petitioners' willingness to settle the case, as well as with respect to petitioners' state of healdth or even their whereabouts. So far as the deficiencies of tax are concerned, therefore, on which petitioners bear the burden of proof, Rule 142(a), and in view of petitioners' failure to appear at trial, there would appear *169 to be ample basis for granting respondent's motion to dismiss for lack of prosecution under Rule 123. However, in view of the facts that (a) the question of additions to tax under section 6653(b) is in issue in all years with respect to petitioner Richard Wynne, an issue upon which respondent has the burden of proof, and (b) that respondent has in effect made certain concessions with respect to the petitioners' unreported income and resulting deficiencies and additions to tax for the years 1963, 1964 and 1965, it would appear more orderly and efficient that the case be disposed of upon the basis of respondent's motion for summary judgment, which covers all issues in the case. The posture of the case, then, is that resposndent contends that all the essential facts with respect to the issues in this case have been established in this record through petitioners' failure to respond to respondent's request for admissions; that there are therefore no longer any material facts in issue; and that respondent is therefore entitled to a decision in his favor as a matter of law. Respondent, as the party moving for summary judgment, has the burden of demonstrating that no genuine issue as to *170 any material fact exists, and that he is entitled to judgment as a matter of law. Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Gulfstream Land and Development v. Commissioner,71 T.C. 587, 596 (1979). The facts relied upon by respondent must be viewed in the light most favorable to petitioners so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. Adickes v. Kress & Co.,supra;United States v. Diebold, Inc.,369 U.S. 654, 655 (1962). Nevertheless, the motion must be granted if the Court is satisfied that no real factual controversy is present. Lyons v. Board of Education of Charleston,523 F.2d 340, 347 (8th Cir. 1975). Respondent relies entirely on the facts and evidence that were deemed admitted under Rule 90(c), when petitioners failed to reply to rlespondent's request for admissions, mailed January 6, 1982. [4] Petitioners' admissions, so established in this record, form the basis for our findings herein. [5]
*171 During the taxable years 1962 through 1967, Richard Wynne (hereinafter referred to as petitioner) [6] was a licensed attorney in the State of New York. His income from the practice of law derived from fees collected in negligence cases. In his practice, petitioner sometimes assumed the identity of at least eight other unrelated licensed attorneys, using stationery printed in their respective names, handling cases in one or more of their names, and receiving settlement checks in the names of said attorneys as well as in his own name. When settlement checks were received by petitioner in the name of the respective client as well as in his name or in one of the other attorney's names which he used, petitioner would cash such checks at a check cashier and remit the client's share to the client in cash. Petitioner kept a record of such checks that he cashed, but did not tell his accountant about them. In early 1977, pursuant to disciplinary proceedings against petitioner in the state courts of New York, petitioner was convicted of misconduct as an attorney and resigned from the Bar of the State of New York. *172 During all the years here in issue, petitioner maintained numerous stock brokerage accounts through which he purchased and sold stocks and bonds. Such accounts were maintained in petitioner's name and/or in the name of petitioner and his wife, Beatrice Wynne, in the name of Beatrice Wynne alone (using either her married surname of Wynne or her maiden name of Tuby), or in the name of petitioner's mother. All such accounts were under the complete control of petitioner. During this same period petitioner likewise maintained bank accounts with numerous banks in the United States through which he deposited funds and secured loans. He also maintained undisclosed accounts in the Bahama Islands and other locations outside the United States. The accounts in the United States were maintained either in petitioner's own name and/or in the names of himself and his wife Beatrice Wynne (using either her married name or her maiden surname), or in the name of either petitioner's mother, or one Jonas E. Apfelbaum. Petitioner had complete control over all such bank accounts. In all of the years 1962 through 1969, petitioner derived unreported taxable income from his law practice and his dealings *173 in stocks and bonds. During the taxable years 1962 through 1969, the records maintained by or on behalf of the petitioners with respect to their taxable income were inadequate, incomplete, failed to disclose all receipts and did not properly reflect the correct taxable income of the petitioners for said years. Upon audit, respondent accordingly determined petitioners' correct taxable income for the years here in issue on the basis of the bank deposit method. For the years 1962 through 1969, petitioners' correct taxable income, taxable income stated on their returns, the understatement of taxable income, correct tax liabilities, taxes reported on their respective returns, and the deficiencies in tax for each year were as follows: 1962
1963
1964
Total Deposits
$95,487.73 $358,033.24 $1,117,636.28 Less: Total Non-Income
Deposits
(12,000.00)
(78,949.26)
(577,999.25)
Net Deposits
$83,487.73 $279,083.98 $ 539,637.03 Less: Dividend
Income Per Return
( 1,783.65)
( 778.55)
( 873.56)
Unreported Income
$81,704.08 $278,305.43 $ 538,763.47 Computation of Tax
Taxable Income
Per Return
$ 932.23 $ 7.569.47 $ 5,841.64 Unreported Income
81,704.08 278,305.43 538,763.47 Medical Adjustment
2,743.91 2,758.71 3,320.27 $85,380.22 $288,633.61 $ 547,925.38 Less: Interest
Expenses
( 600.00)
Taxable Income
As Corrected
$85,380.22 $288,633.61 $ 547,325.38 Tax On Above
43,192.35 213,524.00 385,120.54 Less Credits: a. Dividends Rec'd
( 37.29)
( 27.14)
( 15.47)
b. Investment
Credit
( 67.30)
( 41.82)
( 94.47)
$43,087.76 $213,455.04 $ 385,010.60 Add: Self-Employment
Tax
225.60 259.20 259.20 Corrected Tax
$43,313.36 $213,714.24 $ 385,269.80 Tax on Return (or
as previously
adjusted)
307.46 1,775.52 1,197.59 Deficiency
$43,005.90 $211,938.72 $ 384,072.21 *174 1965
1966
1967
Total Deposits
$2,075,518.19 $802,578.85 $173,154.81 Less: Total Non-Income
Deposits
(955,013.34)
(539,240.45)
(97,775.41)
Net Deposits
A $1,099,504.85 C $260,238.40 $75,379.40 Less: Dividend
Income Per Return
2,815.40 4,743.00 4,978.00 Unreported Income
$1,096,689.45 $255,495.40 $ 70,401.40 Computation of Tax
Taxable Income
Per Return
$ 22,963.54 $ 51,830.00 ($ 2,880.76)
Unreported Income
1,096,689.45 255,495.40 70,401.40 Medical Adjustment
1,757.58 1,392.05 $1,121,410.57 $307,325.40 $ 68,912.69 Less: Interest
Expenses
( 2,500.00)
( 4,566.96)
( 690.18)
Taxable Income
As Corrected
$1,118,910.57 $302,758.44 $ 68,222.51 Tax On Above
B 753,358.80 182,910.91 B 26,695.71 Less Credits: a. Dividends Rec'd
b. Investment
Credit
( 62.00)
( 113.17)
$ 753,296.80 $182,797.74 $ 26,695.71 Add: Self-Employment
Tax
259.20 405.90 422.40 Corrected Tax
$ 753,556.00 $183,203.64 $ 27,118.11 Tax on Return (or
as previously
adjusted)
4,535.84 18,380.90 254.83 Deficiency
$ 749,020.16 $164,822.74 $ 26,863.28 *175 1968
1969
Total Deposits
$54,627.58 $61,704.13 Less: Total Non-Income
Deposits
(25,130.33)
(25,968.00)
Net Deposits
$29,497.25 $35,736.13 Less: Dividend
Income Per Return
( 1,767.00)
1,968.00 Unreported Income
$27,730.25 $33,768.13 Computation of Tax
Taxable Income
Per Return
($ 648.70)
$11,782.17 Unreported Income
27,730.25 33,768.13 Medical Adjustment
1,109.21 1,350.72 $28,190.76 $46,901.02 Less: Interest
Expenses
Taxable Income
As Corrected
$28,190.76 $46,901.02 Tax On Above
7,174.40 15,510.51 Less Credits: a. Dividends Rec'd
b. Investment
Credit
$ 7,174.40 $15,510.51 Add: Self-Employment
Tax
499.20 538.20 Corrected Tax
D $ 8,211.68 E $17,599.76 Tax on Return (or
as previously
adjusted
2,938.38 Deficiency
$ 8,211.68 $14,661.38 A part of the underpayment of tax required to be *176 shown on petitioners' income tax returns for each of the taxable years 1962 through 1969 was due to the fraud of petitioner Richard Wynne with intent to evade tax. OPINION Petitioners have the burden of proof with respect to the tax deficiencies in issue here, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Thus, petitioners having failed to appear and offer any evidence, a decision in favor of respondent would be justified with respect to the tax deficiencies even in the absence of admitted facts in this record. Rule 149. As to the fraud issue, however, the situation is different. Here, the burden of proof is on respondent. The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Respondent has the burden of proving fraud for each taxable year in issue by clear and convincing evidence. Section 7454(a), Rule 142(b); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The necessary fraudulent intent may be inferred from circumstantial evidence such as proof of conduct calculated to mislead or conceal. Beaver v. Commissioner,55 T.C. 85 (1970); *177 Pigman v. Commissioner,31 T.C. 356 (1958).It is not necessary for respondent to prove how much of the underpayment for a particular year was due to fraud since the addition to tax under section 6653(b) applies to every year for which any portion of an underpayment is due to fraud. Drybrough v. Commissioner,238 F.2d 735 (6th Cir. 1956); Smith v. Commissioner,32 T.C. 985 (1959). Direct evidence of fraud is seldom available. Here, however, petitioner has admitted, through his failure to respond to respondent's requested admissions, that his underreporting of income in each of the years in issue before us was done fraudulently and with intent to evade tax. It might not be necessary for us to look any further. We note, however, that petitioner's underreporting of income in all these years was substantial, ranging from a low of $27,730.25 in 1968 to a high of $1,096,689.45 in 1965. Courts have frequently observed that such "consistent understatement of substantial amounts of income is persuasive evidence of fraud". Shaw v. Commissioner,27 T.C. 561, 573 (1956), affd. 252 F.2d 681, 683 (6th Cir. 1958); *178 Estate of Mazzoni v. Commissioner,451 F.2d 197 (3d Cir. 1971); Schwartzkopf v. Commissioner,246 F.2d 731 (3d Cir. 1957). Other significant indicia of fraud are present in this case: (a) the conduct by petitioner of his law practice in names other than his own, and the receipt and cashing of checks derived from cases carried on in other names, and concealing the amounts thereof from his accountant; (b) the maintenance of stock brokerage accounts in names other than his own; (c) the maintenance of various bank accounts in names other than his own; and (d) tht petitioner was obviously an educated man, a practicing lawyer, and could not have been unaware of his obligation to maintain complete and accurate books and records of his taxable activities.Circumstantial evidence and inferences of taxpayer's intent to evade tax are proper bases upon which fraud may be found. Stoltzfus v. United States,398 F.2d 1002, 1005 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969). In satisfying his burden of proof herein on the fraud issue, respondent may rely on facts established otherwise than by evidence presented at trial. Thus, we *179 have accepted as evidence of fraud facts deemed admitted for failure to deny respondent's affirmative allegations in his answer under Rule 37(c). Doncaster v. Commissioner,77 T.C. 334 (1981); Gilday v. Commissioner,62 T.C. 260 (1974). We have also saccepted facts alleged in respondent's answer which are deemed admitted through the application of sanctions under Rule 104, Marcus v. Commissioner,70 T.C. 562 (1978), affd. 621 F.2d 439 (5th Cir. 1980); Rechtzigel v. Commissioner,79 T.C. 132 (1982); and we have done the same thing with respect to facts deemed stipulated under Rule 91(f) (and its predecessor Rule 31(b)(5) of our earlier rules), Strachan v. Commissioner,48 T.C. 335 (1967); Glomar Steel Corporation, et al. v. Commissioner,T.C. Memo. 1982-275. The relevant portion of our Rule 90(e) quoted at footnote 4, supra) is identical with and directly derived from Rule 36(b) of the Federal Rules of Civil Procedure, and a deemed admission under out Rule should have the same effect as under the Federal rules. Freedson v. Commissioner,65 T.C. 333 (1975); *180 Rechtzigel v. Commissioner,supra.[7] We accordingly hold that petitioners' deemed admissions herein, pursuant to Rule 90, may be used by respondent to support his burden of proof on the fraud issue; and we further hold that respondent has carried his burden of proof herein and has shown by clear and convincing evidence that a part of the deficiencies of tax in each of the years before us was due to fraud with intent to evade tax on the part of petitioner Richard Wynne. Section 7454(a); Rule 142(b). *181 There being no material facts in issue, we accordingly conclude that this case can be decided as a matter of law, and that respondent's motion for summary judgment should be granted. [8]
An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise stated, all references to rules herein are to the Tax Court's Rules of Practice and Procedure.↩
2. Unless otherwise noted, all section references herein are to the Internal Revenue Code of 1954, as in effect in the years in issue.↩
3. Additions to tax under section 6653(b) were determined solely against petitioner Richard Wynne.↩
4. Rule 90(c) provides in pertinent part: Each matter [covered by the request for admission] is deemed admitted unless, within 30 days after service of the request or within such shorter or longer time as the Court may allow, the party to whom the request is directed serves upon the requesting party (i) a written answer specifically admitting or denying the matter involved in whole or in part, or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so, or (ii) an objection, stating in detail the reasons therefor. The response shall be signed by the party or his counsel, and the original thereof, with proof of service on the other party, shall be filed with the Court. A denial shall fairly meet the substance of the requested admission * * *. Rule 90(e) further provides in pertinent part: Any matter admitted under this rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission * * *. ↩
5. The facts set out in respondent's request for admissions, paragraphs 1 through 113, are incorporated herein by this reference.↩
6. Petitioner Beatrice Wynne is involved herein solely by reason of having filed a joint return with Richard Wynne.↩
A. A Reflects reduction of $21,000.00 for amount added to Receipts on Tax Return ↩
C. Reflects reduction of $3,100.00 for amount added to Receipts on Tax Return ↩
B. Alternative Tax ↩
D. Includes Tax Surcharge of $538.08 ↩
E. Includes Tax Surcharge of $1,551.05↩
7. With respect to the 1970 amendments creating the present Rule 36(b) of the Federal Rules of Civil Procedure, the notes of the Advisory Committee on Rules state: The new provisions give an admission a conclusively binding effect, for purposes only of the pending action, unless the admission is withdrawn or amended.In form and substance a Rule 36↩ admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party * * *. Unless the party securing an admission can depend upon its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated. * * *.
8. In view of our disposition of respondent's summary judgment motion, respondent's alternative motion to dismiss for failure to prosecute becomes surplusage, and will be denied.↩